**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JORGE RICO,

      Petitioner,

      v.

G. D. LEWIS, Warden,

      Respondent.

_____/

No. C-12-6127 EMC (pr)

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; AND GRANTING CERTIFICATE OF APPEALABILITY**

## I.   INTRODUCTION

      Jorge A. Rico, a prisoner of the State of California, filed this *pro se* action seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254 asserting one claim of jury bias.  The matter is now before the court for consideration on the merits.  For the reasons discussed below, the petition will be denied.

## II.   PROCEDURAL BACKGROUND

      On October 8, 2009, a Monterey County jury found Petitioner guilty of kidnapping for robbery, kidnapping to facilitate carjacking, carjacking, second degree robbery, carrying a loaded firearm, being an ex-felon in possession of a firearm and street terrorism.[1]  4 Court Transcript ("CT") at 864-69.  The jury also found firearm and criminal street gang enhancements to be true.  *Id.* At a separate bench trial, the court found a prior strike allegation to be true.  *Id.*  On November 6, 2009, the trial court sentenced Petitioner to forty years to life in prison.  4 CT at 1015-18.

---

[1] Petitioner was tried with co-defendants Sergio Pablo and Cesar Valle, who were convicted on similar charges and sentenced to twenty-five years to life in prison.  Ex. 8 at 1-2.

**United States District Court**
For the Northern District of California

On direct appeal, co-defendant Pablo argued trial court error based on its denial of his motion for a new trial based on juror misconduct. Ex. 4 at 46-65. Petitioner joined in Pablo's argument on appeal. Ex. 3 at 63. While his appeal was pending, Petitioner filed a separate petition for a writ of habeas corpus in the Court of Appeal. Ex. 12. He alleged a claim of juror misconduct with new evidence that was not presented to the trial court or to the appellate court on direct review. This evidence consisted of signed declarations from the jury foreperson and Petitioner's trial counsel regarding extrinsic evidence the jury received during its deliberations. Ex. 12 (exhibits 1 and 2 attached thereto). On November 28, 2011, on direct review, the California Court of Appeal reduced Petitioner's sentence to thirty years to life and otherwise affirmed the judgment of conviction. Ex. 8, *People v. Rico*, No. H035031 at 44-45 (Cal. Ct. App. November 28, 2011). On the same date, the Court of Appeal denied the petition for a writ of habeas corpus. Ex. 13. On February 22, 2012, the California Supreme Court denied the petitions for review and for a writ of habeas corpus. Exs. 11, 15. On December 3, 2012, Petitioner filed the instant federal petition for a writ of habeas corpus.

### III.   FACTUAL BACKGROUND

The state appellate court provided this summary of the evidence:

> On the evening of September 14, 2007, Gerardo was driving with his friends, Salvador, Miguel, and Juan. At about 9:20 p.m., Gerardo drove his burgundy Honda Accord into the parking lot of a night club called Mariano's. While his friends remained in the car, Gerardo approached Catherine Brown to talk to her. Juan then got in the driver's seat because the club was in an "ugly" neighborhood. Shortly thereafter, two men entered the back seat. One of them pulled out a gun, pointed it at Juan's head, and told him to drive. He also told the three men to give them their money or they would kill them. Juan handed them his wallet, and one of the men took about $600 in cash out of the wallet and threw the wallet on the ground. Salvador gave them more than $1,000 in cash and a check. The check, which was made out to Samuel Vega, was for $400. Miguel, who was sitting in the front passenger seat, put his wallet containing $150 under the seat. The men directed Juan to drive to a nearby park, where they told the victims to get out. The three victims ran back to Mariano's.
>
> When Gerardo saw that his car was leaving, he called 911 to report that it had been stolen. Someone then grabbed his cell phone and hopped in a black Buick Rendezvous SUV. Brown heard someone saying "give us your wallets" in Spanish. She also saw two men from the black SUV, which had a dealer plate with a star on it, get into the Honda. When the Honda drove off, the SUV followed. Brown called

United States District Court
For the Northern District of California

911 and tried to follow the Honda.  However, she lost them within a block.

Sergeant Mark Lazzarini and his partner Officer Chris Balaoro responded to the broadcast of a stolen maroon Honda Accord at Mariano's.  They had also been informed that the robbers were associated with a small, black SUV with a gold emblem or star.  As Sergeant Lazzarini and Officer Balaoro drove towards the club, they saw a maroon Honda Accord and a small, black SUV, a Buick Rendezvous, which had a dealer license plate with a gold star.  They followed the vehicles as they turned into the La Posada Apartment complex.  La Posada Trece, a Sureno gang, originated in this complex.

Sergeant Lazzarini activated the lights on his patrol car, and the Honda pulled into a parking space.  However, since the SUV accelerated to go south, Sergeant Lazzarini broadcast that it was fleeing.  As Sergeant Lazzarini approached the Honda, Valle exited the vehicle.  When he realized that Sergeant Lazzarini was a police officer, he took off running toward the area where the SUV had gone.  Valle was wearing a black T-shirt with a picture of Bob Marley's face on it, gray shorts or pants, and brown gloves.  Sergeant Lazzarini began chasing him.

When Sergeant Lazzarini rounded a corner, he saw Valle running towards the SUV.  At that point, Pablo, who was wearing a light-colored T-shirt, exited the SUV, went into the trash enclosure of the apartment complex, and exited "a second" later.  Pablo was then joined by Valle, and they both ran out of the apartment complex as Sergeant Lazzarini called for backup.

Meanwhile, the SUV had pulled into a parking spot.  Sergeant Lazzarini told the occupants to show their hands, and three people exited the vehicle.  Rico was the driver of the SUV, Quiroz was the right front passenger, and Alejandro Cisneros was the left rear passenger.  After the men were arrested, $110 and a paycheck, which was made out to Samuel Vega, were found near the bumper of the SUV where Sergeant Lazzarini had seen one of the men appear to be setting something down.  Officers found $1,200 in cash in the rear compartment of the SUV.  Sergeant Lazzarini also found a semiautomatic handgun in a dumpster in the trash enclosure into which Pablo had gone briefly.  There was a wallet under the right front passenger seat of the SUV, and Quiroz had two $100 bills in his pocket.

Officers Omar Pena and Ian Parsons detained Valle and Pablo in a nearby field.  Valle was no longer wearing brown gloves, which were found on the path that he had taken. After searching the Honda, police found Miguel's wallet under the front passenger seat and over $400 in cash was found on the driver's seat.

There was also evidence that defendants were gang members.  When Rico was arrested, he had various gang-related tattoos: "MXP" on his abdomen; "Salinas" on his back; "M" above his right knee; "P" above his left knee; one dot on one finger of his right hand; and three dots on left hand.  After searching Rico's residence, officers found a

photograph of Rico, who had a blue bandana draped over his shoulder and was throwing gang signs.  They also found a key fob for a 2002 black Buick Rendezvous and a receipt from Gold Star Motors.

. . .

Officer Bryan McKinley testified regarding gang activities in Monterey County.  He testified that Surenos associate with the word "Sur," the color blue, the Roman numeral "XIII," the 13th letter of the alphabet "M," which is a reference to their affiliation to the Mexican Mafia. In 2007, there were between 500 and 1,000 Sureno gang members in Salinas. Their primary activities were attempted murder, gun possession, carjacking, robbery, and auto theft. Auto theft is their primary means of making money. The money is divided among the gang members who stole the vehicle, and a portion is given to the gang for purchasing firearms, drugs, and helping individuals in jail. Hondas, especially older Accords, are the most popular vehicles stolen by Surenos.

Officer McKinley testified regarding eight predicate offenses committed by Sureno gang members.

. . .

Officer McKinley concluded that defendants were Sureno gang members.  He noted that Rico's tattoo of "MXP" on his abdomen is an abbreviation for Mexican Pride Locos, which is a Sureno criminal street gang in Salinas.  The "M" and "P" tattoos on his legs are also for Mexican Pride Locos.  He explained that gang members, who claim allegiance to the area around Salinas, will often have a "Salinas" tattoo.  Rico's one- and three-dot tattoos refer to the number 13, which is used by Surenos to identify themselves.  Rico was housed in the Sureno area of the jail, and Sureno gang members would not have allowed him to stay there unless he was a Sureno in good standing.  There was a photograph of Rico, which was dated November 2005. Rico had a blue bandana, which is common among Sureno gang members, draped over his shoulder.  Rico also had a telephone list with names and numbers, including those of Sureno gang members. On March 24, 1998, Rico, who was wearing a blue jacket, was involved in a violent offense in which Sureno gang slogans were yelled.  As a result of this incident, Rico was incarcerated until December 2006. Based on this evidence, Officer McKinley opined that Rico was an active participant in the Sureno gang.

. . .

Based on a hypothetical question that included the facts of this case, Officer McKinley testified that the kidnapping, carjacking, robbery, and possession of the gun were committed for the benefit of or in association with the Sureno gang.  He also testified that this conduct would promote, further, or assist criminal conduct by the gang.

It was stipulated that Rico had previously been convicted of a felony listed in section 12021, subdivision (e) and was under the age of 30

United States District Court

For the Northern District of California

4

when he committed the offenses charged in this case.  It was also stipulated that Rico's fingerprints were found on the SUV.

Ex. 8 at 2-9 (footnotes omitted).

## IV.   STANDARD OF REVIEW

The district court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts."  *Williams (Terry) v. Taylor*, 529 U.S. 362, 412-13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id.* at 413.  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  *Id.* at 411.  A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable."  *Id.* at 409.

When "a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."  *Harrington v. Richter*, 131 S. Ct.

770, 784-85 (2011).  And it is not necessary that the state court's decision on the merits be accompanied by reasoning for § 2254(d) to be applied.  *Id.* at 784.  "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief."  *Id.*

"Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary."  *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion from the state courts.  *Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991).

The standard of review under AEDPA is somewhat different where the state court gives no reasoned explanation of its decision on a petitioner's federal claim and there is no reasoned lower court decision on the claim.  In such a case, a review of the record is the only means of deciding whether the state court's decision was objectively reasonable.  *Plascencia v. Alameida*, 467 F.3d 1190, 1197-98 (9th Cir. 2006);  *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003); *Greene v. Lambert*, 288 F.3d 1081, 1088 (9th Cir. 2002).  When confronted with such a decision, a federal court should conduct "an independent review of the record" to determine whether the state court's decision was an objectively unreasonable application of clearly established federal law.  *Plascencia*, 467 F.3d at 1198; *Himes*, 336 F.3d at 853.  Section 2254(d)(1) applies to decisions that are unexplained as well as to reasoned decisions.  *Harrington*, 131 S. Ct. at 784-85.

If constitutional error is found, habeas relief is warranted only if the error had a "'substantial and injurious effect or influence in determining the jury's verdict.'"  *Penry v. Johnson*, 532 U.S. 782, 795 (2001) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993)).

## V.  DISCUSSION

Petitioner contends that his "federal . . . constitutional right to a fair trial by an impartial jury was denied because, during deliberations, the jury was exposed to, and discussed, a document never admitted into evidence that revealed that Petitioner's prior conviction was for assault with a firearm."  Pet'r Mem. P. & A. at 4.

**United States District Court**
For the Northern District of California

A.     <u>Trial Court Proceedings</u>

Among other crimes and enhancements, the information charged Petitioner with being an ex-felon in possession of a firearm, and alleged criminal street gang enhancements and a strike enhancement based on a prior juvenile conviction for assault with a firearm.  3 CT at 572-612. Before trial, the prosecutor indicated that she intended to offer evidence of the prior juvenile conviction in support of the gang enhancement.  3 CT 646.  Defense counsel moved to bifurcate the trial on the strike enhancement and to exclude evidence of the prior juvenile conviction in relation to the gang enhancement as unduly prejudicial.  3 CT 619-20; 1 Reporter's Transcript ("RT") at 5-9. The court granted the motion to bifurcate, but deferred ruling on the motion to exclude evidence of the prior until the time the gang expert was to testify.  1 RT at 7, 9.  Right before the gang expert testified, counsel renewed his motion to exclude evidence of the prior, arguing that the violence of the earlier conviction would be unduly prejudicial.  11 RT at 3026-30.  The court granted the motion in part, ruling that the following testimony about the prior would be allowed: "that [petitioner] committed a violent felony without describing the exact nature of the felony. . . . And the officer can testify to the circumstances surrounding the event that make it clear it was a gang-related crime, . . . and that he was incarcerated until December of 2006 as a result of this incident without getting into where or what circumstances."  11 RT 3032-33.  The gang expert testified in accordance with the court's ruling.  11 RT 3187-88.

Later, as part of the proof that Petitioner was an ex-felon in possession of a firearm, the jury was read the stipulation that Petitioner had "previously been convicted of a felony."  12 RT 3305.

After both sides rested, the court gave the jury the following relevant instructions:

> You must decide what the facts are in this case.  You must use only the evidence that was presented in this courtroom.  Evidence is the sworn testimony of witnesses, the exhibits admitted into evidence, and anything else I told you to consider as evidence.

15 RT at 4327.

> You may consider the evidence of gang activity only for the limited purpose of deciding whether the defendant acted with the intent, purpose and knowledge that are required to prove the gang-related crimes and enhancements charged, or the defendant had a motive to commit the crimes charged.

1    You may also consider this evidence when you consider the facts and
     information relied on by an expert witness in reaching his opinion.

2

3    You may not consider this evidence for any other purpose.  You may
     not conclude from this evidence that the defendant is a person of bad
     character, or that he has a disposition to commit crime.

4

5    15 RT 4359.

6    The defendant and the People have stipulated or agreed that the
     defendant was previously convicted of a felony.  This stipulation
7    means that you must accept this fact as proved.  Do not consider this
     fact for any other purpose.  Do not speculate or discuss the nature of
8    the conviction.

9    15 RT 4360.

10          After the jury returned its verdicts, Pablo moved for a new trial based on juror misconduct.  5

11   CT 1075.3-.9.  The evidence that is relevant to Petitioner's claim is a declaration by Pablo's defense

12   counsel stating that, after trial, he had received an e-mail from the jury foreperson who "indicated

13   that the jury was aware that defendant Rico has strikes because the strike prior had been mistakenly

14   submitted to the jury during trial.  The fact that the prior was for a deadly weapons charge hardened

15   the jury against all of the defendants according to the foreperson's email."  5 CT 1075.6.  The court

16   denied the motion, noting that, "Given the overwhelming nature of the evidence in this case, I can't

17   imagine that even what is alleged to have occurred would have changed the outcome."  20 RT 5704.

18   B.     Direct Appeal Proceedings

19          On appeal, Pablo argued that the trial court erred by denying his motion for a new trial based

20   on juror misconduct.  Ex. 4 at 46-65.  Petitioner joined in this argument.  Ex. 3 at 63.

21          The California Court of Appeal summarized the factual background of the claim as follows:

22          On February 23, 2010, the day before sentencing, Pablo's trial counsel
            filed a motion for new trial in which he alleged juror misconduct and
23          requested an evidentiary hearing and juror identification information.
            In his declaration in support of the motion, counsel stated that he had
24          received two e-mails from the jury foreperson in November and
            December 2009.  These e-mails stated that "during a break in the trial
25          the juror went to the bathroom and while there the juror found a
            woman crying uncontrollably.  The juror tried to console the woman
26          by putting her arm around the woman. The juror told the foreperson
            that the woman communicated information about her son who was a
27          defendant in the same trial with Sergio Pablo. . . . [] . . . The woman
            was defendant Jorge Rico's mother.  Rico's mother communicated to
28          the juror that Rico had spent the last 10 years in jail and this was his

8

United States District Court

For the Northern District of California

last chance.  The foreperson indicated that the jury was aware that defendant Rico has strikes because the strike prior had been mistakenly submitted to the jury during the trial.  The fact that the prior was for a deadly weapon charge hardened the jury against all the defendants according to the foreperson's email."

At the hearing on the motion for new trial, defense counsel requested an evidentiary hearing and permission to contact the juror.  The prosecutor responded that the request for an evidentiary hearing must "comply with [Code of Civil Procedure section] 237, and there's got to be prima facie evidence that it will be somehow important to a new trial.  And I think based on the declarations [sic] we have, none of which are in affidavit form, all it basically says is that some information about a codefendant may have come into the jury.  That information was also admitted at trial, basically.  So I don't think there's anything alleged, even in the declaration by [defense counsel], that would give rise to a 237 showing to get the information of the juror."  Defense counsel stated: "All I was trying to do at that point was to get to a point where I would have permission to contact her and go forward from there. [] The contact I have had was from the foreperson who related what happened."  The trial court observed: "Frankly, based on what I've been provided, the Court doesn't think there's a reasonable basis to invade the privacy of a juror.  Given the overwhelming nature of the evidence in this case, I can't imagine that even what is alleged to have occurred would have changed the outcome."  The prosecutor then stated: "And just for the record, that evidence was basically put in through the gang expert in terms of contact of the codefendant Rico."  The trial court agreed and denied the motion.

Ex. 8 at 32-34.

The California Court of Appeal assumed this constituted juror misconduct, but found no prejudice under state law:

Even if we assume that there was juror misconduct, there was no substantial likelihood of juror bias.  The jury was aware that Rico had been convicted of a felony and had been incarcerated for several years for this offense.  That the jury improperly learned that Rico's prior conviction involved firearm use was not unduly inflammatory given the evidence of firearm use by Rico's fellow gang members, and that the present case did not involve the firing of a firearm.  Thus, viewed objectively, the information was not "inherently and substantially likely to have influenced the juror." (*In re Carpenter* (1995) 9 Cal. 4th 634, 653.)  We next examine the entire record to determine whether there was a substantial likelihood that a juror was actually biased. (*Id.* at 654.)  The evidence of Rico's tattoos, jail housing with Surenos, and photograph of him displaying gang signs established that Rico was an active gang member.  The evidence also established that Rico was a member of a gang whose primary activities included offenses involving the use of a firearm.  Moreover, the jury was instructed that it "must use only the evidence that was presented in this courtroom," that Rico's prior felony conviction was admitted solely to prove the section 12021 charge in count 15, and that it should "not

United States District Court

For the Northern District of California

1    consider this fact for any other purpose.  Do not speculate or discuss
2    the nature of the conviction."  Based on this record, it was not
     substantially likely that a juror was actually biased by learning that
3    Rico's prior conviction involved a deadly weapon.

4    Ex. 8 at 38.  The state court also rejected Petitioner's federal constitutional claim:

5        Defendants also argue that the trial court violated their federal
         constitutional rights when it denied their motion for a new trial on the
6        ground of juror misconduct.  A criminal defendant is entitled to an
         impartial jury in a state court under the United States Constitution.
7        (U.S. Const., 6th and 14th Amends.)  When the jury receives improper
         extraneous information, a criminal defendant "is entitled to a new trial
8        if there is a reasonable possibility that the communication . . . could
         have affected the verdict."  (*United States v. Keating* (1998) 147 F.3d
9        895, 901.)  An appellate court's "inquiry is objective rather than
         subjective" and it "need not ascertain whether the extrinsic evidence
10       *actually* influenced any specific juror. [Citation.]  The government
         has the burden of showing beyond a reasonable doubt that extrinsic
11       evidence did not contribute to the verdict. [Citation.]"  (*Id.* at
         901-902, italics added.)  As previously discussed, there is no
12       reasonable possibility that the information that Rico had previously
         served a prison term and that his prior strike conviction involved a
13       deadly weapon could have contributed to the verdict.

14   Ex. 8 at 38-39.

15   C.    State Habeas Proceedings

16        While Petitioner's direct appeal was pending, he filed a separate petition for a writ of habeas

17   corpus in the California Court of Appeal.  In his petition, he raised a similar claim to the claim on

18   appeal regarding juror misconduct, but, in support of his habeas claim, he submitted new evidence

19   which was not presented to the trial court.  This evidence consisted of signed declarations from the

20   jury foreperson and Petitioner's trial counsel.

21        The foreperson stated in his declaration that, among the documents reviewed by the jury

22   during its deliberations, was "one that related to defendant Rico's prior conviction. " Ex. 12, (exhibit

23   1 attached thereto, attachment A).  The document to which the foreperson refers is attached to his

24   declaration and is a blank verdict form relating to Petitioner's prior conviction for assault with a

25   firearm.  The foreperson stated that he reviewed the document and read the contents to the other

26   jurors, and that they "talked at length about" the document because the foreperson "did not recall

27   any evidence during the trial about the specifics of defendant Rico's prior conviction, and this

28   document required the jury to determine whether Petitioner was adjudicated for assault with a

United States District Court

For the Northern District of California

1    firearm in 1998." Ex. 12, ex. 1 attached at 1.   The foreperson further stated that the jurors "did not

2    know what to do with the information" and, finally, they "sent a note to the judge through the bailiff

3    asking about the document," and "[a]fter awhile, the bailiff appeared and asked that the document be

4    returned," and the foreperson gave it to her.  *Id.* at 2.  The bailiff did not bring "a note or any written

5    instructions or communication from the judge about what to do regarding the document."  *Id.*

6         The foreperson also stated that "[b]ased upon defendant Rico's prior criminal record,

7    specifically his assault with a firearm charge, I concluded that he was the leader and instigator of the

8    incident which was the basis of the charges against the defendants and, based upon our discussions, I

9    believe this was also the conclusion of the other jurors."  *Id.*

10        Trial counsel stated, in his declaration, that, until he was contacted by Petitioner's appellate

11   attorney, he "was never informed, and did not know, that the jury had been given, or had discussed"

12   the blank verdict form setting forth Petitioner's prior juvenile adjudication for assault with a firearm,

13   or that the jury sent out a note asking what it should do with this verdict form." Ex. 12 (ex. 2

14   attached thereto at 1-2).  Counsel stated: "as the trial on Mr. Rico's prior conviction was bifurcated,

15   the jury should not have been given this verdict form. . . . [t]hroughout trial, I was careful to prevent

16   the jury from learning that Rico's prior conviction was for the crime of assault with a firearm."  *Id.*

17        The California Court of Appeal summarily denied Petitioner's petition.  Ex. 13.  His petition

18   raising the same claim in the California Supreme Court was also summarily denied.  Exs. 4-5.

19   D.   <u>Federal Authority</u>

20        The Sixth Amendment provides that the criminally accused has a right to a trial by an

21   impartial jury.  U.S. Const. amend. VI.  The trial judge has the responsibility of protecting this right

22   to ensure the defendant receives a fair trial.  *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 555

23   (1976).

24        Any unapproved private communication, contact, or tampering with a juror during a criminal

25   trial is presumptively prejudicial.  *Remmer v. United States*, 347 U.S. 227, 229 (1954).  When such

26   an incident occurs, the court "should determine the circumstances, the impact thereof upon the juror,

27   and whether or not it was prejudicial. . . ."  *Id.* at 230.  A claim that a jury was influenced by the use

28   of extrinsic evidence so as to deprive the petitioner of a fair trial is cognizable in federal habeas.

1   *Jeffries v. Blodgett*, 5 F.3d 1180, 1190-91 (9th Cir. 1993).  A finding of juror misconduct on the

2   basis of its consideration of extrinsic evidence "gives rise to a presumption of prejudice that may

3   only be rebutted with strong, contrary proof of harmlessness."  *Xiong v. Felker*, 681 F.3d 1067, 1077

4   (9th Cir. 2012) (citing *Caliendo v. Warden of Cal. Men's Colony*, 365 F.3d 691, 696 (9th Cir.

5   2004)).  In other words, the inquiry into a jury's consideration of extrinsic evidence does not end at

6   whether it occurred; upon a finding of misconduct, a rebuttable presumption of prejudice applies,

7   which the government may overcome with proof that the jury's consideration of the extrinsic

8   evidence was harmless.  *Id.*  Thus, the court must determine if the error had a "substantial and

9   injurious effect or influence in determining the jury's verdict."  *Henry v. Ryan*, 720 F.3d 1073, 1085

10  (9th Cir. 2013) (citing *Brecht*, 507 U.S. 619 (1993)).

11          Courts may not inquire about the subjective impact of the extraneous material on the jury.

12  Fed. R. Evid. 606(b); *Henry*, 720 F.3d at 1087.  In other words, juror testimony that extrinsic

13  evidence was considered is proper, but a juror may not testify about, and a court may not consider,

14  the subjective effect of the evidence on the particular juror or on the jury's deliberative process.  *Id.*;

15  *Fields v. Brown*, 503 F.3d 755, 778 (9th Cir. 2007).

16  E.      Analysis

17          1.      Relevant State Court Decision

18          Respondent argues that the California Court of Appeal's opinion on direct appeal is the

19  relevant decision for purposes of habeas review because it was the last reasoned state court decision.

20  Petitioner argues that this Court should only consider the habeas decision because the appellate

21  court on direct review did not have the declarations submitted to the habeas court.

22          In the decision on direct appeal, the court stated in a footnote, "Rico has also filed a petition

23  for writ of habeas corpus, which we have considered with this appeal.  We dispose of his habeas

24  corpus petition by separate order."  Ex. 8 at 2 n.2.  This indicates that the court on direct appeal

25  reviewed the declarations Petitioner submitted with his habeas petition and rejected Petitioner's

26  argument that the declarations changed the outcome of his claim.  Thus, the court on direct appeal

27  considered all the evidence that Petitioner submits with his federal habeas petition.  Because the

28  habeas petition was summarily decided, the decision on direct appeal is the last reasoned state court

1  decision addressing Petitioner's jury misconduct claim, and this is the decision this Court must

2  review. *See Ylst*, 501 U.S. at 801-06.

3       2.   <u>Evidence Considered</u>

4  Federal Rule of Evidence 606(b) provides:

5       (1) **Prohibited Testimony or Other Evidence.** During an inquiry
   into the validity of a verdict or indictment, a juror may not testify
6  about any statement made or incident that occurred during the jury's
   deliberations; the effect of anything on that juror's or another juror's
7  vote; or any juror's mental processes concerning the verdict or
   indictment. The court may not receive a juror's affidavit or evidence
8  of a juror's statement on these matters.

9       (2) **Exceptions.** A juror may testify about whether:

10         (A) extraneous prejudicial information was improperly
    brought to the jury's attention;

11

12         (B) an outside influence was improperly brought to
    bear on any juror; or

13         (C) a mistake was made in entering the verdict on the
    verdict form.

14

15 Fed. R. Evid. 606(b).

16      Thus, juror testimony about the jury's weighing of extrinsic evidence may be considered by a

17 reviewing court, but juror testimony about the subjective effect of the evidence on the particular

18 juror or other jurors may not be considered. *Sassounian v. Roe*, 230 F.3d 1097, 1108 (9th Cir.

19 2000). The *Sassounian* court noted the "Alice in Wonderland quality" this rule lends to the

20 discussion of prejudice from extrinsic evidence because it precludes consideration of the most direct

21 evidence of prejudice – the jurors' testimony that they relied on the extrinsic evidence in

22 determining the verdict. *Id.* However, the court concluded that, "the weight of authority and sound

23 policy reasons support this view," and, thus, it only considered that the extrinsic evidence was

24 reviewed by the jury and did not consider the jurors' testimony about the subjective impact of the

25 evidence. *Id.* at 1109.

26      Accordingly, this Court may consider the foreperson's declaration testimony that extrinsic

27 evidence was given to the jury and the jury weighed it. However, this Court may not review the

28 foreperson's testimony relating how the evidence subjectively affected him or other jurors.

**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

3.    Merits of the Claim

Applying state law, the state appellate court concluded that the jury's receipt of the blank verdict form regarding Petitioner's prior conviction was not error because the jury was given the verdict form inadvertently by the court and there was no evidence that the jury was aware that the information was improperly before it.  Ex. 8 at 37-38.  However, the court assumed there was juror misconduct and, addressing prejudice, found there was no substantial likelihood of juror bias.  *Id.* at 38.

Under the federal authority cited above, this Court assumes, without deciding, that there was juror misconduct.  *See Remmer*, 347 U.S. at 229 (any unapproved private communication with a juror during a criminal trial is presumptively prejudicial).   Thus, the Court must decide whether the jury's consideration of the blank verdict form had a substantial and injurious effect or influence in determining the jury's verdict.  *See Henry*, 720 F.3d at 1085; *Brecht*, 507 U.S. at 638.

The Ninth Circuit has set forth five factors for considering if extrinsic evidence is prejudicial: "(1) whether the material was actually received, and if so how; (2) the length of time it was available to the jury; (3) the extent to which the juror discussed and considered it; (4) whether the material was introduced before a verdict was reached, and if so, at what point in the deliberations; and (5) any other matters which may bear on the issue of whether . . . the extrinsic material affected the verdict."  *Sassounian*, 230 F.3d at 1109 (citing *Dickson v. Sullivan*, 849 F.2d 403, 406 (9th Cir. 1988)). None of the factors alone is dispositive.  *Jeffries v. Blodgett*, 5 F.3d 1180, 1190 (9th Cir. 1993). With respect to the fifth factor cited above, the court considers five additional factors:  "(1) whether the prejudicial statement was ambiguously phrased; (2) whether the extraneous information was otherwise admissible or merely cumulative of other evidence adduced at trial; (3) whether a curative instruction was given or some other step taken to ameliorate the prejudice; (4) the trial context; and (5) whether the statement was insufficiently prejudicial given the issues and evidence in the case." *Sassounian,* 230 F.3d at 1109 (citing *Jeffries v. Wood*, 114 F. 3d 1484, 1491-92 (9th Cir. 1997); *Mancuso v. Olivarez*, 292 F.3d 939, 952 (9th Cir. 2002).

**United States District Court**
For the Northern District of California

1    Beginning with the first factor, the evidence shows that the blank verdict form was

2    inadvertently included among the other verdict forms received by the jury during its deliberations.

3    Thus, the evidence was received by the jury.

4        The second factor, the length of time it was available to the jury, must be extrapolated from

5    the record.  The foreperson stated that the jury talked about the form "at length" and "for a long

6    time."  However, he did not provide a specific time estimate for the discussion.  Ex. 12, (ex. 1

7    attached).  The record shows that the jury deliberated a total of six hours before returning multiple

8    verdicts against three defendants.  *See* 4 CT 853, 856-57, 861-66; 870-943.  Therefore, it is

9    reasonable to conclude that it was difficult for the jury to have discussed the verdict form for a

10   meaningful period of time.

11       A determination of the third factor, the extent to which the jury discussed and considered the

12   verdict form, must also be extrapolated from the record because the Court does not consider the

13   foreperson's statement that the jury was confused about the blank verdict form.  However, the

14   objective evidence shows that the blank verdict form was of an ambiguous nature.  The fact that it

15   was blank and was included in the stack of verdict forms that the jury was to fill out based upon its

16   determination of Petitioner's and his co-defendants' guilt or innocence of the many charged offenses

17   and enhancements reasonably indicated to the jury that it was one more verdict for it to decide.  *See*

18   4 CT 870-943 (verdict forms pertaining to all defendants).  On the other hand, the jury could have

19   taken the verdict form as indicating that Petitioner's past conviction to which the parties had

20   stipulated involved a firearm.  However, as discussed below in the section on prejudice, no

21   substantial and injurious effect or influence on the jury's verdict resulted even if the jury considered

22   the verdict form as indicating that Petitioner's past conviction involved a firearm.

23       The fourth factor, when during the deliberations the form was considered, also must be

24   extrapolated from the record because the jury foreperson did not mention this detail.  A page number

25   89 appears on the bottom of the extrinsic verdict form.  Ex. 12 (ex. 1, attached, attachment A).  This

26   raises the inference that this verdict form was near the end of a stack of verdict forms the jury

27   considered in relation to Petitioner.  *See* 4 CT 906-943 (numbered verdict forms pertaining to

28   Petitioner).  Based on this, it is reasonable to conclude that the jury did not see this verdict form until

1   late in its deliberations about Petitioner, after it had most likely reached verdicts on many of the

2   substantive counts and enhancements.

3        Regarding the fifth factor, the Court considers the other factors listed in *Sassounian* that

4   point to prejudice or to the lack thereof.  As to the first factor, as discussed above, the extrinsic

5   evidence was ambiguous.

6        As to the first part of the second factor, the extraneous information was not admissible

7   because the record shows that the trial court granted defense counsel's motion in limine to exclude

8   evidence that Petitioner's past conviction involved a firearm.  However, Petitioner and Respondent

9   dispute the second part of this factor, regarding whether the evidence was cumulative to other

10  evidence adduced at trial.

11       The jury heard testimony from gang expert Bryan McKinley that Petitioner had been

12  convicted of a gang-related violent offense in 1998, for which he had been incarcerated until

13  December 2006.  11 RT 3187-88.  Also, as part of the proof of the charge of possession of a firearm,

14  the jury was read the stipulation that Petitioner "has previously been convicted of a felony."  12 RT

15  3305.  Thus, through properly admitted evidence, the jury was aware that Petitioner had committed a

16  violent gang-related felony for which he had served a lengthy prison term.  Given this evidence, the

17  additional evidence that the violent felony might have involved a gun, even if not cumulative, was of

18  de minimis significance.

19       The third factor considers whether a curative instruction was given.  Although the trial court

20  did not give a curative instruction with respect to the verdict form itself, it gave other instructions

21  which ameliorated the prejudice that could have resulted from the verdict form.  For instance, the

22  jury was instructed that it "must use only the evidence that was presented in this courtroom," 15 RT

23  4327, that it could consider the evidence of gang activity, which included evidence of Petitioner's

24  prior conviction, "only for the limited purpose of deciding whether the defendant acted with the

25  intent, purpose, and knowledge that are required to prove the gang-related crimes and enhancements

26  charged" or when considering the facts and information relied on by an expert witness in reaching

27  his opinion, not for any other purpose, 15 RT 4359, and that the stipulation regarding Petitioner's

28  prior felony conviction was to be used to decide whether Petitioner had previously been convicted of

**United States District Court**
For the Northern District of California

a felony in relation to Count 15, possession of a firearm by a person convicted of a felony, not for any other purpose and that the jury was not to speculate or discuss the nature of the conviction, 15 RT 4360.  This last instruction, in particular, directed the jury not to consider whether Petitioner's prior conviction involved a firearm.  *See Weeks v. Angelone*, 528 U.S. 225, 234 (2000) (jury presumed to follow its instructions).

The fourth factor pertains to the trial context in which the extrinsic information was received. The jurors received the extrinsic verdict form after the close of evidence and after they had received instructions informing them what issues they would be deciding and what evidence they could consider in their deliberations.  And although the jury received the extrinsic evidence before it submitted its verdict to the court, as discussed above, it is likely that the jury did not consider this evidence until it had deliberated on many, if not all, of the counts and enhancements pertaining to Petitioner.

The fifth factor considers the prejudice caused by the extrinsic information in light of the issues and evidence heard by the jury.  As discussed above, the fact that the jury was exposed to the information that Petitioner's prior violent felony conviction may have involved a firearm was of de minimis importance in relation to the issues and evidence presented to the jury.  The jury heard evidence that Petitioner was an active member of the Sureno gang whose primary activities involved attempted murder and other violent, gun-related offenses.  11 RT 3155-74; 3179-80; 3187-88; 12 RT 3340-44; 3348-50 (gang expert's testimony).  The jury convicted Petitioner on Count 16, participation in a criminal street gang, showing that it found that Petitioner was a member of the Sureno gang street gang.  Given that guns played a major role in a Sureno gang member's life, the fact that Petitioner's prior violent felony conviction may have involved a firearm could not have been a determinative factor in the jury's decisions regarding Petitioner.

That the evidence against Petitioner and his co-defendants was overwhelming also is illustrated by the short six hours that the jury deliberated, after a seven-day trial, to decide on the many counts charged against each of the three co-defendants.  *See Mayfield v. Woodford*, 270 F.3d 915, 926 (9th Cir. 2001) (strength of jurors' belief in petitioner's guilt reflected by short amount of time they deliberated; two hours after three-day trial).

**United States District Court**
For the Northern District of California

1    Petitioner argues that the extrinsic firearm evidence was prejudicial because the jury was

2    being asked to determine whether he was guilty of the crime of an ex-felon in possession of a

3    firearm when he did not have a firearm in his possession at the time of the charged offenses.[2]  Trav.

4    at 10.   However, Petitioner overlooks that, on the element of possession for this charge, the jury was

5    instructed that "two or more people may possess something at the same time.  A person does not

6    have to actually hold or touch something to possess it.  It is enough if the person has control of it, or

7    the right to control it either personally or through another person."  15 RT 4360.  It is undisputed

8    that a firearm was used in the charged offenses and that one of Petitioner's co-defendants pointed a

9    gun at the victims.  Thus, the fact that the jury learned that Petitioner's prior conviction involved a

10   firearm was not necessary for its finding that Petitioner possessed a gun.

11   Petitioner argues that prejudice is shown by the foreman's words that the "revelation that

12   Petitioner's prior conviction was for assault with a firearm" hardened the jury against the defendants

13   and convinced the jurors that Petitioner was the instigator of the charged offenses.  However, as

14   discussed above, the Court may not consider the subjective effect the extrinsic evidence had on any

15   of the jurors.  Petitioner's argument that the foreman's statement should be considered because it

16   was his "objective opinion based on his evaluation of the content of the extrinsic evidence" is

17   without merit.

18   Petitioner argues that the extrinsic verdict form was prejudicial because it indicated that he

19   "shot someone."  Trav. at 12.  The offense indicated on the verdict form was "assault with a

20   firearm."  The verdict form said nothing about a shooting.

21   Petitioner argues the extrinsic evidence was prejudicial because, without it, he was just a

22   Sureno gang member, not a gang member who shoots.  Trav. at 12.  However, as discussed

23   previously, the gang expert's testimony showed that the Sureno gang was associated with violent

24   crimes involving firearms and that Petitioner's past felony conviction was gang-related.  The fact

25

26

27   [2] Although Petitioner focuses here on the charge of ex-felon in possession of a firearm, it
28   appears from his petition and traverse that he asserts that the extrinsic evidence prejudiced the jury's
     verdict on all the charges against him.

1   that the jury may have learned that Petitioner's past conviction involved a firearm did not add

2   substantially to what the jury already knew about him.

3       Petitioner argues that he was prejudiced because the trial court's failure to notify defense

4   counsel that the verdict form inadvertently was given to the jury, prevented counsel from bringing a

5   motion for a mistrial or a new trial.  This putative claim of judicial misconduct was not asserted in

6   his petition.  A traverse is not the proper pleading to raise additional grounds for relief.  *See*

7   *Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994).  Furthermore, even though

8   Petitioner's counsel did not bring a motion for a new trial before the trial court, the appellate court

9   considered this claim on direct appeal.  *See* Ex. 8 at 32 n.8.

10      On balance, the Court finds the presumption of prejudice with respect to the jury's verdict on

11  all the charges against Petitioner is overcome.  Although the Court did not give specific curative

12  instructions as to the verdict form itself, other instructions informed the jury that it was not to

13  consider it.  Also, the verdict form was ambiguous as to what it meant.  Even if the jury inferred that

14  it meant Petitioner's prior conviction involved a firearm, that inference had de minimis importance

15  in light of the overwhelming evidence that Petitioner was a member of the Sureno gang and that the

16  gang's activities primarily consisted of violent crimes involving firearms.

17      Based on the above, the extrinsic evidence did not have a substantial and injurious effect or

18  influence on the jury's verdict.  Accordingly, Petitioner is not entitled to habeas relief.

19  F.    Motion for Evidentiary Hearing and Request for Discovery

20      Petitioner moves for an evidentiary hearing "to resolve disputed facts."  He also requests

21  discovery materials.  Because Petitioner filed these documents on the same day he filed his traverse,

22  Respondent has not had an opportunity to respond to them.

23      Under the AEDPA, express limitations are imposed on the power of a federal court to grant

24  an evidentiary hearing.  The habeas statute provides that a district court may not hold an evidentiary

25  hearing on a claim for which the petitioner failed to develop a factual basis in State court unless the

26  petitioner shows that: (1) the claim relies either on (a) a new rule of constitutional law that the

27  Supreme Court has made retroactive to cases on collateral review, or (b) a factual predicate that

28  could not have been previously discovered through the exercise of due diligence, and (2) the facts

1  underlying the claim would be sufficient to establish by clear and convincing evidence that, but for

2  constitutional error, no reasonable fact finder would have found the applicant guilty of the

3  underlying offense.  28 U.S.C. § 2254(e)(2).  However, even if an evidentiary hearing is permitted

4  because a prisoner was able to clear the hurdle posed by § 2254(e)(2), one is not required.  *Downs v.*

5  *Hoyt*, 232 F.3d 1031, 1041 (9th Cir. 2000); (citing *McDonald v. Johnson*, 139 F.3d 1056, 1059-60

6  (5th Cir. 1998) (§ 2254(e)(2) specifies situations where evidentiary hearings are allowed, not where

7  they are required)).  The district court retains discretion whether to hold such an evidentiary hearing.

8  *Williams v. Woodford*, 384 F.3d 567, 590 (9th Cir. 2004).  A federal evidentiary hearing is required

9  if: (1) petitioner's allegations, if proven, would establish the right to relief, and (2) the state court

10  trier of fact has not, after a full and fair hearing, reliably found the relevant facts.  *Perez v. Rosario*,

11  459 F.3d 943, 954 n.5 (9th Cir. 2006); *Williams v. Calderon*, 52 F.3d 1465, 1484 (9th Cir. 1995);

12  *Jeffries v. Blodgett*, 5 F.3d 1180, 1187 (9th Cir. 1993).

13  Because Petitioner requested a hearing in state court, he has cleared the hurdle posed by

14  § 2254(e)(2).  In his motion for an evidentiary hearing, however, Petitioner does not specify what

15  evidence he would present.  This deficiency is remedied, somewhat, by Petitioner's discovery

16  request, in which he requests discovery of a letter that the foreman sent to the trial court telling the

17  court about the "situation" regarding the extrinsic evidence and "other issues" and permission to

18  interview the other eleven jurors "in regards to any questions and facts this court needs to know

19  about the extraneous evidence."  However, Petitioner's requested discovery, if presented at an

20  evidentiary hearing, is insufficient to establish that his allegations, if proven, would establish his

21  right to relief.

22  As discussed above, this Court may not consider evidence pertaining to the jury's subjective

23  deliberative process.  The only facts that would be discoverable from the eleven other jurors would

24  be the objective facts that are already before the Court--that the extrinsic evidence of a blank verdict

25  form was given to the jury, that the jury asked the trial court for directions on how to proceed with it,

26  and that the trial court, without further instructions, requested that the jury return the verdict form.

27  Perhaps the Court could learn exactly when in its deliberations the jury discovered the blank verdict

28  form and how long it discussed it.  *See Henry*, 720 F.3d at 1087 (discussing the limited utility of

United States District Court

For the Northern District of California

1    evidentiary hearings in determining whether jury's consideration of extrinsic evidence was

2    prejudicial).  However, this information would not overcome the Court's conclusion that the

3    extrinsic evidence, even if the jury found it to mean that Petitioner's past conviction involved a

4    firearm, would not have a substantial and injurious effect or influence on the jury's verdict.  Most

5    importantly, the jury heard evidence that Petitioner had committed a violent, gang-related felony for

6    which he had served a long sentence.  The jury determined that Petitioner was a member of the

7    Sureno gang and heard evidence that the gang's primary activities were violent offenses which often

8    involved firearms.  That the jury may have concluded that the extrinsic evidence meant that

9    Petitioner's past conviction involved a firearm would not have substantially changed its

10   determination of the facts pertaining to Petitioner's charged offenses of kidnapping, carjacking,

11   robbery, street terrorism and being an ex-felon in possession of a firearm.

12          Petitioner's request to obtain a letter the foreman wrote to the trial court, without indicating

13   what it would say, cannot be a basis for an evidentiary hearing.  Petitioner has obtained a declaration

14   from the foreman regarding the extrinsic evidence; if the foreman had other relevant information to

15   communicate about the trial, he could have done so in his declaration.

16          Accordingly, Petitioner's request for an evidentiary hearing is denied.  Given this ruling and

17   the denial of his petition, the request for discovery is denied as moot.

18   G.      Certificate of Appealability

19          The federal rules governing habeas cases brought by state prisoners require a district court

20   that enters a final order adverse to a petitioner to grant or deny a certificate of appealability ("COA")

21   in the ruling.  *See* Rule 11(a), Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254.

22          A petitioner may not appeal a final order in a federal habeas corpus proceeding without first

23   obtaining a COA.  *See* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).  A judge shall grant a COA "only

24   if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C.

25   § 2253(c)(2).  The certificate must indicate which issues satisfy this standard.  28 U.S.C. §

26   2253(c)(3).  "Where a district court has rejected the constitutional claims on the merits, the showing

27   required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable

28

1    jurists would find the district court's assessment of the constitutional claims debatable or wrong."

2    *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

3           Although the Court has denied the petition, jurists of reason may find the result debatable or

4    wrong.  Therefore, a COA is GRANTED.

5                                    **VI.    CONCLUSION**

6           The petition for writ of habeas corpus is **DENIED** on the merits.  Petitioner's motion for an

7    evidentiary hearing and request for discovery are **DENIED**.  A certificate of appealability is

8    **GRANTED**.  The Clerk shall close the file.

9

10          IT IS SO ORDERED.

11

12   Dated:  March 5, 2014

13                                                   _____

14                                                   EDWARD M. CHEN
                                                     United States District Judge

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California